## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**STONEBRIDGE LIFE INSURANCE CO.,**

     Plaintiff,

**vs.**                                      **No. Civ. 10-582 MV/DJS**

**JOSE GARCIA; ROBERT PENNINGTON;**
**THE ESTATE OF MELODY ANN PENNINGTON GARCIA;**
**and CARL A. BROWN,**

     Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) pro-se Defendant Jose Garcia's *Motion to Allow Unorthodox Form of Pleadings*, filed Jan. 31, 2011 [Doc. 39]; on his *Motion to Intervene*, filed Feb. 16, 2011 [Doc. 45]; on his *Motion for Plaintiff to be Summoned to Hearing*, filed March 25, 2011 [Doc. 59]; on his *Motion for Accounting*, filed March 25, 2011 [Doc. 60]; on his *Motion for Sanctions*, filed March 25, 2011 [Doc. 61]; on his *Motion for Extension of Time to File Response/Reply*, filed July 7, 2011 [Doc. 80]; on his *Motion for Appointment of Administrator*, filed Aug. 22, 2011 [Doc. 86]; and on the Estate of Melody Ann Pennington Garcia ("Estate") by and through Robert Pennington ("Pennington"), and Carl A. Brown's ("Brown") *Motion to Dismiss*, filed May 9, 2011 [Doc. 75]. In addition, so that the Court may issue a ruling on Stonebridge Life Insurance Company's ("Stonebridge") and the Estate's joint motion for an Order entering a judgment granting relief on Stonebridge's Amended Complaint for Interpleader, filed October 25, 2010 [Doc. 8], the Court also has considered the briefs filed in response to the Court's March 29, 2011 Memorandum Opinion and Order. *See* Docs. 66, 71. The Court's Order required additional briefing regarding

whether Stonebridge is also liable for any interest accruing from the date of Melody's death to the date it filed its interpleader action.  And second, the parties shall brief the issue regarding whether Stonebridge is contractually or otherwise entitled to attorney fees and other expenses for having filed the interpleader action and, if so, who should pay those fees as well as the costs of filing the complaint for interpleader.

As an additional matter, Garcia and the Estate of Melody Pennington (since Brown has agreed that the insurance proceeds should be paid to the Estate) shall also further brief the following issue regarding the merits of who is entitled to receive the proceeds of Melody's insurance policy: should the Court stay a decision regarding the rightful beneficiary to the proceeds of an insurance contract when the primary beneficiary has been convicted of murdering the insured, the conviction has been upheld on appeal, and only a habeas petition is pending?

Doc. 62 at 6-7.  Having considered the parties' submissions, the record and the relevant law, the Court concludes that this case is ripe for final disposition.  The Court concludes that Garcia is statutorily barred from claiming an interest in the life-insurance proceeds and that his claims to such proceeds must be dismissed with prejudice.  The Court also concludes that Garcia's motion for an extension of time should be granted, but that his crossclaims against Pennington/Estate are not proper because they do not relate to the proceedings at bar.  The Court will dismiss those claims without prejudice.  The Court will deny all of Garcia's other pending motions as moot.  The Court further concludes that judgment must be granted in favor of the Estate/Brown on Stonebridge's amended complaint for interpleader, and that the complaint must be dismissed because Garcia was not entitled to those benefits after August 29, 2007 and there is no adversarial action between the Estate and Brown in regard to which of them should be paid the proceeds of the policy.  *See* Doc. 8, Ex. A.  Finally, the Court concludes that Stonebridge must immediately pay the Estate the proceeds of the policy plus pre-filing interest of 15%/annum from September 22, 2004, and that Stonebridge is not entitled to recover its attorney fees for filing the tardy and unnecessary interpleader action.

## I.      Background facts and proceedings.

The Court has already set forth a summary of the facts that were undisputed.

In August 2007, Garcia was convicted of having murdered his wife, Melody, on June 4, 2004. The Court takes judicial notice that Garcia's conviction was upheld on appeal on June 5, 2008, and that on August 21, 2009, the New Mexico Supreme Court denied his petition for a writ of mandamus. The Court further takes judicial notice that Garcia filed a state petition for habeas relief on April 15, 2009, and that on October 20, 2010, the state-district judge gave Garcia an additional 90 days to amend the petition (which was the second time since February 12, 2010 that Garcia had been permitted an extension of time in which to amend). *See State v. Garcia*, No. D-1010-CR-200700026, Tenth Judicial District Court, DeBaca County, New Mexico.[1] The basis of the habeas petition apparently is ineffective assistance of counsel. *See* Doc. 17 at 2. Garcia remains incarcerated.

Melody had a life-insurance policy through Stonebridge under which a $25,000 death benefit is payable to a beneficiary. *See* Doc. 1, Ex. A. The policy provides that, "at [Melody's] death," the proceeds of the policy would be paid to her "spouse, if living; otherwise equally to [her] then living lawful children, if any, . . . . otherwise equally to [her] living parents or parent; otherwise to [her] estate." *Id.* Ex. A. at 5. But New Mexico law provides:

> In all cases involving . . . contracts, whether of real, personal, or mixed properties, where a person, who, by committing murder and where such person is convicted of either a capital, first or second degree felony, and might receive some benefit therefrom either directly or indirectly, the common-law maxim to the effect that one cannot take advantage of his own wrong, shall control and be applied to the interpretation, construction and application of all statutes or decisions of this state in order to deprive and prevent him from profiting from such wrongful acts.

N.M.S.A. 1978 § 30-2-9. At the time she was murdered, Melody was survived by Garcia; by her son, Carl Brown (who was 25 years old at the time of Melody's death); and by her mother, her two sisters, and a brother. *See* Doc. 1, Ex. B at 4. On July 27, 2009, Robert Pennington (Melody's brother and the personal representative of her estate) filed a "Proof of Accidental Death" with Stonebridge. *See* Doc. 1, Ex. B at 1, 7. Carl Brown also filed a "Proof of Accidental Death" claim on August 20, 2009. *See* Doc. 1, Ex. C. On September 28, 2010, however, Brown signed a

---

[1] The Court takes judicial notice that, on January 18, 2011, March 17, 2011, and June 6, 2011, the state court granted Garcia additional 60-90 day extensions in which to file an Amended Petition for Writ of Habeas Corpus.

notarized statement requesting the funds owed by Stonebridge "be relinquished to the estate of Melody Ann Pennington Garcia."  *See* Doc. 8, Ex. A.

Stonebridge filed its amended *Complaint for Interpleader* on June 18, 2010.  *See* Doc. 5.  In its request for relief, Stonebridge requested five remedies:

> 1. That process or summons issue out of this Court for the three Defendants, requiring each of them to appear and answer this amended complaint.
> 2. That Defendants be ordered to interplead and settle among themselves their rights or claims to the benefit due under the Policy and deposited in Court as alleged.
> 3. That this Court issue an Order of Injunction enjoining and restraining Defendants from instituting or prosecuting any suit or proceeding against Plaintiff in any other Court on account of the Policy, and that in due course the Order of Injunction be made permanent.
> 4. That an award be made to Plaintiff out of the funds herewith deposited in this Court to pay for costs, counsel fees and other expenses Plaintiff is compelled to expend in the prosecution of this suit.
> 5. That Plaintiff is discharged from all further liability relating to the Policy and that Plaintiff have such other and further relief as may be just and equitable.

Doc. 5 at 3-4. . . . .

> Garcia filed a second Answer to the Complaint on December 8, 2010, noting that, while he had been convicted of murdering his wife, he "has affirmative defense of pending appeal."  Doc. 27 at 2.  The other Defendants filed a joint answer to the Amended Complaint on December 1, 2010.  *See* Doc. 25.

Doc. 62 at 2-4.

Since that time, additional undisputed material facts have been established by the parties. Stonebridge states in its brief that it "did not receive any claim for the proceeds of her insurance policy (the "Policy") until Defendant Robert Pennington filed such a claim on July 27, 2009 on behalf of Ms. Garcia's estate," Doc. 69 at 3 and attached only Pennington's and Brown's claims dated August 20 and July 22, 2009.  But Pennington filed a sworn affidavit, which Stonebridge has never rebutted, stating that he contacted Stonebridge on June 7, 2004, to inform it of Melody's

accidental death.  *See* Doc. 71, Ex. A.  Pennington also established with documentary evidence that Stonebridge responded that it would send a claim form, which it sent to Pennington in September 2004.  *See id.*  According to a letter sent to Brown by Stonebridge, by June 21, 2004, Brown had also made a claim for Melody's life-insurance proceeds.  *See id.* & Ex. A-2 (letter from Stonebridge to Brown that Stonebridge also sent to Pennington, acknowledging claim and informing claimants what documents Stonebridge needed to resolve the claim).  Pennington established with documentary evidence that he filled out a "Proof of Accidental Death - Affidavit of Claimant" as the Estate's personal representative on September 18, 2004, which informed Stonebridge in writing that Melody had been murdered by Garcia.  *See id.*, Exs. A, A-1.  He also apparently included the documentation that Stonebridge requested.  *See, e.g.* Doc. 5, Ex. B at 2 (Melody's death certificate dated June 22, 2004); *id.* at 3 (June 2004 newspaper article about the murder stamped as received from Pennington on October 14, 2004).  Melody's policy provided that Stonebridge would "pay all benefits covered by the Policy as soon as we receive proper written proof of loss *sufficient to determine liability*."  Doc. 5, Ex. A at 7 (italics added).

## II.    Analysis.

### A.  Garcia is barred from recovering the benefits of Melody's insurance policy.

NMSA 1978, § 30-2-9 provides:

> A. The acquiring, profiting or anticipating of benefits by reason of the commission of murder where the person committing such crime is convicted of either a capital, first or second degree felony, is against the public policy of this state and is prohibited.
> B. In all cases involving . . . contracts, whether of real, personal or mixed properties, where a person, who, by committing murder and where such person is convicted of either a capital, first or second degree felony, and might receive some benefit therefrom either directly or indirectly, the common-law maxim to the effect that one cannot take advantage of his own wrong, shall control and be applied to the interpretation, construction and application of all statutes or decisions of this state in order to deprive and prevent him from profiting from such wrongful acts.

5

The New Mexico Supreme Court has held that this statute, which is located in New Mexico's criminal code,

> is not merely declaratory of the common law, nor is it a mere extension of or addition to the common-law maxim that a beneficiary may not profit by his own crime. If the legislature had intended it as merely declaratory of the common law, it would have been easy to have said that one who is convicted of feloniously causing the death of another shall not benefit therefrom, as did Kentucky, Mississippi, Oklahoma, Texas, and Utah. The legislature, by express and unambiguous language, prohibited only those convicted of murder from so profiting. In this instance, the legislative intent to limit the common-law maxim to one convicted of murder is clear and plain.
>
> . . . . The question of whether the person to whom the property would ordinarily go murdered the insured is one to be judicially determined.  The legislature has seen fit to provide that that determination must be ascertained in a criminal proceeding in which the person who would have taken the property is charged with killing the insured.

*Rose v. Rose*, 79 N.M. 435, 437, 444 P.2d 762, 764 (1968).  That holding is binding upon this Court and was binding on Stonebridge.  *See Aranda v. Camacho*, 122 N.M. 763, 765, 931 P.2d 757, 759 (Ct. App. 1997) (noting that this criminal statute "clearly requires a conviction of murder" to bar the right to proceeds under a contract).  Neither the case law nor the statute mention exhaustion of appeal as a prerequisite for barring claims, although the New Mexico Legislature clearly knows how to make an appeal a statutory requirement for barring a murderer from receiving benefits that result from the death of the murderer's victim.  In the New Mexico Probate Code, for example, a statute similarly bars an heir from receiving "benefits that pass under the Probate Code" if the heir "feloniously and intentionally kills the decedent."  *See Aranda*, 122 N.M. at 765, 931 P.2d at 759; N.M.S.A. 1978, § 45-2-803(B).  The probate code further provides, however, that,

> After *all right to appeal* has been exhausted, a judgment of conviction establishing criminal accountability for the felonious and intentional killing of the decedent conclusively establishes the convicted individual as the decedent's killer for purposes of this section. In the absence of a conviction, the court upon the petition of an interested person must determine whether under the preponderance of evidence

> standard the individual would be found criminally accountable for the felonious and intentional killing of the decedent.  If the court determines that under that standard the individual would be found criminally accountable for the felonious and intentional killing of the decedent, the determination conclusively establishes that individual as the decedent's killer for purposes of this section.

N.M.S.A. 1978, § 45-2-803(G) (emphasis added).  Although one way § 45-2-803(B) provides for conclusive establishment of conviction is that appeal rights must be exhausted in a criminal case, it does not require that habeas proceedings be exhausted, and it also allows, as in § 30-2-9, for a conclusive determination of guilt in a non-criminal proceeding to be sufficient to prohibit the murderer from receiving benefits.

As noted above, it is undisputed that in August 2007, Garcia was convicted in a criminal proceeding of murdering Melody.  Under the plain reading of § 30-2-9(B), therefore, Garcia was statutorily barred at that time from benefitting from the murder and prohibited from receiving the life-insurance proceeds.  *See Marbob Energy Corp. v. N.M. Oil Conservation Com'n*, 146 N.M. 24, 28, 206 P.3d 135, 139 (2009) (noting New Mexico's statutory-construction principle is that "[w]e look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended.  When statutory language is clear and unambiguous, [this Court] must give effect to that language and refrain from further statutory interpretation.") (internal quotation marks and citation omitted).  The Court concludes that it has been clear since August 29, 2007 that Garcia was not entitled to the life-insurance benefits.

**B.  Garcia's counter/cross claims must be dismissed**.

In the March 29, 2011 Order, the Court gave Garcia twenty days to file an amended Answer to Stonebridge's Complaint for Interpleader.  *See* Doc. 62 at 6.  But Garcia also filed a separate Crossclaim against Pennington and/or Melody's Estate.  *See* Doc. 66.  In it, he contended that, in June 2004, his agent attempted to get some of Garcia's personal possessions from his and Melody's

residence, but that Pennington refused to give him anything except Garcia's older clothing and shoes. *See* Doc. 66, Att. 1 at 5. Garcia states that he was unable to recover a large amount of business property, sporting equipment, and jewelry that he and Melody had, in writing, agreed would be his separate property, and that he was also entitled to some community property after her death. *See id.* at 5-6.

A party may plead a crossclaim against another party to the same suit "if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counter-claim, or if the claim relates to any property that is the subject matter of the original action." FED. R. CIV. P. 13(g). The present lawsuit is an interpleader action involving only the question of which defendant is entitled to the death benefits of a single life-insurance policy. The Court concludes that Garcia's claims against Pennington and Melody's Estate are not proper crossclaims, and notes that they should have been brought in the probate proceedings in state court. The Court will dismiss the Crossclaims without prejudice.

### C. Stonebridge is liable for pre-filing interest on the life-insurance proceeds.

A life-insurance policy for accidental death, similar to other life-insurance policies, "is simply a contract between the owner of the policy and a life insurance company, where in return for a premium the life insurance company agrees to pay the beneficiary under the policy a specific amount of money should the insured die during the term of the policy." *Phillips v. Wellborn*, 89 N.M. 340, 342, 552 P.2d 471, 473 (1976). "State law governs prejudgment interest." *Biava v. Insurers Admin. Corp.*, Nos. 94-2013, 94-2014, 1995 WL 94461, *6 (10th Cir. March 1, 1995) (affirming award of prejudgment interest in ERISA case based on New Mexico's interest statute because it served to compensate the insured for the insurance company's failure to pay benefits and was not otherwise inequitable). "When the amount owed [under a contract] is fixed or readily

8

ascertainable, prejudgment interest [under N.M.S.A. 1978 § 56-8-3] generally should be awarded absent peculiar circumstances as a matter of right." *State ex rel. Bob Davis Masonry, Inc. v. Safeco Ins. Co. of Am.*, 118 N.M. 558, 560-61, 883 P.2d 144, 146-47 (1994) (noting that "Section 56-8-3 allows prejudgment interest in cases proving money due by contract.  Under this statute, the obligation to pay prejudgment interest arises by operation of law and constitutes an obligation to pay damages to compensate a claimant for the lost opportunity to use money owed the claimant and retained by the obligor between the time the claimant's claim accrues and the time of judgement (the loss of use and earning power of the claimant's funds") (internal quotation marks and footnotes omitted); *Smith v. McKee*, 116 N.M. 34, 36, 859 P.2d 1061, 1063 (1993) ("An award of prejudgment interest is committed to the sound discretion of the trial court, except when such interest should be awarded as a matter of right."); *Jackson Nat. Life Ins. Co. v. Receconi*, 113 N.M. 403, 421 & n.16, 827 P.2d 118, 136 & n.16 (1992) (affirming award of policy amounts plus prejudgment and post-judgment interest to life-insurance beneficiary and citing *Ranch World of N. M., Inc. v. Berry Land & Cattle Co.*, 110 N.M. 402, 404, 796 P.2d 1098, 1100 (1990) for the proposition that "prejudgment interest following breach of contract to pay definite sum of money 'generally should be awarded absent peculiar circumstances").

The Court concludes that the issue of prejudgment interest due in this case is controlled by N.M.S.A. 1978 § 56-8-3, which provides that "[t]he rate of interest, in the absence of a written contract fixing a different rate, shall be not more than fifteen percent annually in the following cases: A. on money due by contract."  When, as here, a party "is entitled to prejudgment interest as a matter of right, the burden rests on the [party owing under the contract] to demonstrate a sufficient basis for denying such an award."  *State ex rel. Bob Davis Masonry, Inc.*, 118 N.M. at 561, 883 P.2d at 147 (internal quotation marks omitted).  Stonebridge contends that it "is not liable for any pre-

filing interest because it did not exhibit any unreasonable delay in bringing this action."  Doc. 69 at 1.  The Court disagrees and concludes that Stonebridge has demonstrated no basis for denying such an award.

As noted above, the life insurance policy at issue provides that "[Stonebridge] will pay all benefits covered by the Policy *as soon as* [Stonebridge] receive[s] proper written *proof of loss sufficient to determine liability*." Doc. 5, Ex. A at 7 (italic added).   The beneficiary provisions were clear: "at [Melody's] death," the proceeds of the policy would be paid to her "spouse, if living; otherwise equally to [her] then living lawful children, if any, . . . . otherwise equally to [her] living parents or parent; otherwise to [her] estate." *Id.* at 5.  Garcia never made a claim for the proceeds of the policy until Stonebridge served him with the interpleader in 2010 that suggested he may have a right to the proceeds.  *See* Doc. 66 at 2.

Brown, Melody's only son, made a claim for the proceeds in early June 2004, and Stonebridge had all of the documentation it needed to establish *its liability* to pay the policy - that is, proof of Melody's accidental death and her death certificate showing she was killed by another person, by September 2004.  *See* Doc. 71, Exs. A, A-1.  Thus Stonebridge's duty to pay the proceeds to a contract beneficiary arose at the latest by September 2004.  At that point, since Stonebridge's only question was *to whom* it should pay the proceeds, and it had been made aware that Garcia had been charged with Melody's murder, it could have filed the interpleader and deposited the proceeds into the Court's registry until Garcia was convicted of the murder.  But it did not do so.  Instead, it continued to hold and use the money for its own benefit.

After August 29, 2007, when it was conclusively established in the state criminal proceedings that Garcia murdered Melody and was statutorily barred from receiving the proceeds, Stonebridge should have immediately paid the proceeds to Brown, Melody's only son and the next

beneficiary under the contract, because he had the right to the proceeds as a matter of law, notwithstanding the estate's claim (because the estate was a beneficiary under the contract only if Melody had no living children)[2]. Again, it did not do so.

There was no need to file an interpleader action after August 29, 2007. The Court concludes that Stonebridge unreasonably withheld payment of the policy proceeds and unreasonably delayed in filing the interpleader. Stonebridge is therefore liable to Brown not only for the insurance proceeds, but also for prejudgment interest of 15% per year on those proceeds under N.M.S.A. 1978, § 56-8-3 from September 21, 2004[3]. *See Bauer v. Uniroyal Tire Co.*, 630 F.2d 1287, 1290-91 (8th Cir. 1980) ("Equity courts have developed the general rule that interest is awarded in interpleader actions only if the stakeholder unreasonably delays depositing the fund with the court . . . . If a delay is found to be unreasonable, interest is awarded from the date the indebtedness was due to the date the deposit was made.) (citations omitted); 7 Charles Alan Wright, et al., FEDERAL PRACTICE AND

---

[2] Based on the documentation Stonebridge has filed of record, it appears that Pennington was not actually making claims "adverse" to Brown's. Stonebridge provided no documentary evidence to support its attorney's arguments that Pennington and Brown had adverse claims to the proceeds. Pennington and Brown, who have always been represented by the same attorney, *see* Doc. 25, state that, "[t]here has been no dispute between Brown and Melody's estate as to the ownership of the policy proceeds." Doc. 71 at 2 n.1. In his claim form, Pennington filed an affidavit of heirship *on behalf of* Brown, acknowledging that Melody had one child and that he was filing as a personal representative apparently on Brown's behalf, *see* Doc. 5, Ex. B at 7; and it appears that Pennington had actually assisted Brown, who lived in Florida, and faxed Brown's 2009 proof of claim to Stonebridge on August 13, 2009 using his fax machine from "Ranchers Well Supply." *See id.* (listing Pennington's email address as "rancherswell@gmail.com"); Ex. C at 1-3 (showing that documents were faxed from Ranchers Well Supply).

[3] The Court has chosen this date instead of an earlier one when Brown may have submitted the necessary documentation because Pennington, as Melody's personal representative, submitted documents establishing that he filed the proof of accidental death along with the requisite information by September 18, 2004, and the Court gave three days for Stonebridge to receive the documents. Again, Stonebridge does not dispute Pennington's affidavit or deny that he sent the documentation.

PROCEDURE, § 1716, 650-52 (3d ed. 2001) ("The court's discretion also extends to directing a dilatory stakeholder to deposit interest for the pre-action period during which the stakeholder failed to seek interpleader or make payment or to have the deposit invested when it appears that the action will be lengthy. … [I]nterest may not be ordered if the court determines that the stakeholder's delay was not undue or was reasonable under the circumstances.").

**D.  Stonebridge is not entitled to its attorney fees for having filed the tardy interpleader action.**

"The award of fees and costs to an interpleader plaintiff . . .  is an equitable matter that lies within the discretion of the trial court." *Transamerica Premier Ins. Co. v. Growney*, No. 94-3396, 1995 WL 675368 at *1 (10th Cir. Nov. 13, 1995); *and see* 7 C. Wright and A. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1719 at 476-488 (1st ed. 1972) (listing, among factors to be considered: whether the case is simple; whether the stakeholder performed a unique service for the claimants or the court; whether the stakeholder acted in good faith and with diligence; whether the services rendered benefitted the stakeholder; and whether the claimants improperly protracted the proceedings.  Stonebridge states that it should be paid its attorney fees for having filed the interpleader because it "is a disinterested stakeholder who has conceded its liability in full and is not in some way culpable regarding the subject matter of this interpleader action." Doc. 69 at 2.  Again, for the reasons set forth in the previous section awarding prejudgment interest, the Court disagrees.

As noted above, Stonebridge should have filed its interpleader by September 21, 2004 and should have paid the proceeds to Brown by August 29, 2007.  There was no need to file an interpleader on June 18, 2010, when Garcia had been found guilty of Melody's murder years earlier and Brown's contractual right to the proceeds had been conclusively established.  The only beneficiary to this extensive delay was to Stonebridge, which rendered no services to the Court,

failed to act in good faith or with diligence, and unnecessarily involved Garcia in this litigation.

**IT IS ORDERED** that

1) Stonebridge's and the Estate's joint motion for an Order entering a judgment granting relief on Stonebridge's Amended Complaint for Interpleader [Doc. 8] is DENIED;

2) Judgment in favor of the Estate/Brown is entered on the Amended Complaint for Interpleader [Doc. 5] and the Amended Complaint is DISMISSED WITH PREJUDICE, Jose Garcia's claims for benefits are DISMISSED WITH PREJUDICE, and the Estate's/Brown's claims for the life-insurance benefits are GRANTED with prejudgment interest from September 22, 2004 at set forth above, and Stonebridge shall not recover any attorney fees for bringing this action;

3) Garcia's motion for an extension of time [Doc. 80] is GRANTED;

3)  All other of Garcia's motions [Docs. 39, 45, 59, 60, 61, and 86] are DENIED as moot;

4)  The Estate's/Brown's motion to dismiss [Doc. 75] is GRANTED and Garcia's crossclaims against Pennington and/or the Estate are DISMISSED WITHOUT PREJUDICE.

**DATED** this 28th  day of September, 2011.

_____
**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**

13